UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ESTATE OF GERALDINE F.
JENNINGS, ROBERT J.
JENNINGS, CHERYL FAZO and
KIM S. JENNINGS,

    Plaintiffs,

v.                                                 Case No.:  2:19-cv-72-FtM-38NPM

GULFSHORE PRIVATE HOME
CARE, LLC,

    Defendant/Third
    Party Plaintiff

CRIS-CAROL SAMUELS,

    Third Party Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendant Gulfshore Private Home Care, LLC's Fourth Motion for Summary Judgment (Doc. 155), Plaintiffs' response in opposition (Doc. 161), and Gulfshore's Reply (Doc. 170).[2] The Court grants the motion.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] Gulfshore has requested oral argument on its motion. (Doc. 165). After reviewing the record and the parties' memorandums of law, the Court finds that it has sufficient information to decide the motion without additional oral argument. M.D.Fla.L.R. 3.01(j).

## BACKGROUND

This is a wrongful death action arising under Florida law.  Gulfshore is a licensed Florida nurse registry that refers home healthcare professionals to elderly and disabled clients.  (Doc. 88-3 at 3).  Gulfshore hires the home healthcare professionals as independent contractors.  (Doc. 154-1, 30:12-15; 31:13-15; 112:1; 113:16-17).  It uses software to send out potential referrals to its registered independent contractors.  (Doc. 154, 140:15-19).

Third-Party Defendant Cris-Carol Samuels is a certified nursing assistant who registered with Gulfshore to receive client referrals in 2016. (Doc. 153-1, 50:3-11).  In March 2017, Gulfshore assigned Samuels to transport Antoinette Janich ("the Client").  (Doc. 53 at ¶¶ 11-12; Doc. 88-1 at ¶¶ 11-12). While transporting her, Samuels drove onto the sidewalk and fatally struck Geraldine F. Jennings.  (Doc. 53 at ¶ 15; 53-1; Doc. 88-1 at ¶ 15).  This suit ensued.

Plaintiffs are Jennings' estate, husband, and daughter.  They sue Gulfshore for wrongful death based on three theories of negligence.  (Doc. 53). In Count I, Plaintiffs claim Samuels was an agent for, or in a joint venture with, Gulfshore.  (Doc. 53 at 4-5).  In Count II, Plaintiffs claim "Gulfshore was negligent in selecting, hiring, retaining, instructing, and/or supervising" Samuels.  (Doc. 53 at 5).  In Count III, Plaintiffs claim Gulfshore is vicariously

2

liable for Samuels' negligence because it breached its nondelegable duty to ensure safe transportation services. (Doc. 53 at 6-7).

Gulfshore moves for summary judgment as to the Estate, husband, and surviving daughters. (Doc. 150). It argues summary judgment is proper because Samuels was an independent contractor and Gulfshore is not liable for her actions.

After briefing on the motion for summary judgment finished, and nearly five months after discovery ended, Plaintiffs moved to compel Gulfshore to authenticate documents purportedly published on its website. (Doc. 172). Two subsequent related motions are pending. (Doc. 175; Doc. 182). The Court denies the requests as procedurally improper. Discovery is over. Plaintiffs could have requested this material during discovery but did not. As Gulfshore points out, Plaintiffs chose not to ask about the material at the 30(b)(6) deposition. It is not appropriate for Plaintiffs to be filing discovery motions as the Court considers a summary judgment motion. And even if the Court considered these materials, it cannot discern from a brief review how they help Plaintiffs' case.[3]

## LEGAL STANDARD

---

[3] To wit, one webpage lists "transporting clients to social activities and appointments" as a service nursing assistants provide clients, seeming to contradict Plaintiffs' argument that driving clients is impermissible for a nurse registry. *See* Doc. 110-1 at 5.

3

Summary judgment is proper only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *See O'Ferrell v. United States,* 253 F.3d 1257, 1265 (11th Cir. 2001). An issue is genuine if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

When opposing a motion for summary judgment, the nonmoving party must show the existence of specific facts in the record that create a genuine issue for trial. *See id.* at 256. The Court should view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Burton v. City of Belle Glade,* 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (citation omitted). Failure to show evidence of any essential element is fatal to the claim and the Court should grant summary judgment. *See Celotex,* 477 U.S. at 322-23. But if reasonable minds could find

4

a genuine issue of material fact, then summary judgment should be denied. *See Miranda v. B & B Cash Grocery Store*, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992).

## DISCUSSION

In Florida, a claim for wrongful death is "created and limited by Florida's Wrongful Death Act." *Cinghina v. Racik*, 647 So.2d 289, 290 (Fla. 4th DCA 1994); *Estate of McCall v. United States*, 134 So.3d 894, 915 (Fla. 2014). It provides a right of action "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person . . . and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued." Fla. Stat. § 768.19; Plaintiffs allege wrongful death based on three negligence theories. To state a claim for negligence in a wrongful death action, a plaintiff must allege: "(1) the existence of a legal duty owed to the decedent, (2) breach of that duty, (3) legal or proximate cause of death was that breach, and (4) consequential damages." *Jenkins v. W.L. Roberts, Inc.*, 851 So.2d 781, 783 (Fla. 1st DCA 2003).

The primary disagreement among the parties is whether Samuels is an independent contractor. If she is, Plaintiffs will face an uphill battle ascribing liability to Gulfshore because Florida follows the general rule that the employer of an independent contractor is not liable for the contractor's negligence because the employer has no control over how the work is done.

5

*McCall v. Alabama Bruno's, Inc.*, 647 So.2d 175, 177 (Dist. Ct. App. Fla. 1994) (quoting Restatement (Second) of Torts § 409). But it also recognizes exceptions to the general rule which may generally be divided into three categories: 1) negligence in selecting, instructing, or supervising the contractor; 2) non-delegable duties arising out of some relation toward the public or the particular plaintiff; and 3) work which is specially, peculiarly, or 'inherently' dangerous. *Id.*

In Florida, home health services—defined as health and medical services furnished by an organization to an individual in the individual's home—are governed by the Home Health Services Act, Fla. Stat. §§ 400.461 to 400.5185. Gulfshore maintains a nurse registry under Florida law. (Doc. 155 at 3; Doc. 160 at 3). A nurse registry procures healthcare-related contracts for registered nurses, licensed practical nurses, certified nursing assistants, home health aides, companions or homemakers, **who are compensated by fees as independent contractors**, including, but not limited to, contracts for the provision of services to patients. *See* Fla. Stat. 400.462(21)(emphasis added).

Samuels is a certified nursing assistant. (Doc. 153-1 at 42; Doc. 108). Section 400.506(6)(d) of the Florida Statutes lays out the following employment relationship:

> A registered nurse, licensed practical nurse, certified nursing assistant, companion or homemaker, or home health aide referred for contract under this chapter by a nurse registry ***is deemed an independent contractor and not***

6

> *an employee of the nurse registry under any chapter regardless of the obligations imposed on a nurse registry under this chapter or chapter 408.*

(emphasis added).

Under the Home Health Services Act, Samuels is an independent contractor. The question of an employer/employee relationship is generally a question for the trier of fact. *Pate v. Gulmore,* 647 So.2d 235, 236 (Fla. 1st Dist. Ct. App. Fla 1994). Perhaps that is why Plaintiffs urge the Court to apply the seven-factor test laid out in *Cantor v. Cochran,* 184 So.2d 173 (Fla. 1966) to determine whether an employer-employee relationship exists. But sometimes, the only reasonable view of the evidence compels the conclusion that an employment relationship did not exist. If so, a court may determine the issue as a matter of law. *See Johnson v. Gourmet Gardens, Inc.,* 827 So.2d 1020, 1020 (2d Dist. Ct. App. Fla. 2002). Here, as a matter of law, Florida classifies caregivers referred by nurse registries as independent contractors. Samuels acknowledges she was an independent contractor. (Doc. 153-1, 48:24-25). The Court need not delve any deeper into the relationship.[4]

---

[4] Even if the Florida legislature did not classify Samuels as an independent contractor, application of the *Cantor* test would still compel the Court to find Samuels was an independent contractor. Gulfshore exercised no control over Samuels' work. Samuels is licensed by the state and received no training or supervision from Gulfshore as to the means and methods of her work. Samuels understands she is an independent contractor and was paid directly by the client. And she used her own tools and materials, including driving her own car at the time of the accident.

Grasping at straws, Plaintiffs present five arguments to attempt to convince the Court that Samuels was not an independent contractor.

First, Plaintiffs argue Gulfshore fraudulently identifies as a nurse registry while it operates a non-emergency medical transportation business. Though Plaintiffs concede Gulfshore is a nurse registry, they try to muddy the water by arguing it is impermissible for a nurse registry to provide transportation. But this assertion is not rooted in fact. A Certified Nursing Assistant provides Activities of Daily Living and Instrumental Activities of Daily Living custodial care services, one of which is transportation. (Doc. 107-1 at 6). The independent contractors and the client may agree to transportation services. (Doc. 154, 91:1-20). And as Gulfshore points out, Florida Administrative Code 59A-18.009(2)(b) includes among the responsibilities of a "companion" the responsibility "to provide escort services such as taking the patient or client to the health care provider." Plaintiffs provide no evidence to support their assertion. Instead, based solely on <u>one</u> driving event, Plaintiffs insinuate Gulfshore is a transportation business and makes providing transportation a core business activity. Incidental transportation provided by the caregiver does not convert a nurse registry into a transportation company.

Second, Plaintiffs contend the Home Health Services Act does not apply because by driving a client, Gulfshore referred a nursing assistant to help a

8

client in an activity "outside of what is permitted by Florida law." But under the statutory framework, a nurse registry can provide occasional transportation services. Here, the client requested a nursing assistant to assist with her custodial care. (Doc. 107-1 at 6). Transportation is a custodial care service and incidental to the overall care services normally provided by a nursing assistant. (Doc. 107-1 at 6). In addition, Section 400.506(6)(b) permits a nursing assistant to assist with "physical transfer." The Home Health Services Act applies.

Third, Plaintiffs argue the independent contractor rule should not apply because Geraldine Jennings was an innocent bystander. This argument is a nonstarter. If Plaintiffs want to recover from Gulfshore for Geraldine Jennings' death, they must show Gulfshore violated a duty of care owed to Jennings. Central to that analysis is the relationship between Gulfshore and Samuels. No doubt this was a tragic accident. But a tragedy does not mean those seeking justice can circumvent well-established legal principles.

Fourth, regarding the argument Samuels had to drive the client (Doc. 160 at 4), it appears Samuels discovered she had to transport the client after she had accepted the assignment, unusual because she typically knew what an assignment entailed before accepting it. This does not mean she was Gulfshore's employee. There is no evidence Samuels had to transport the client. To the contrary, one of Gulfshore's owners testified if an independent

9

contractor shows up to a job and the services being requested differ from the description provided in the text or email, it is solely within the independent contractor's discretion whether to perform the services. (Doc. 154-1, 142:8-14).

Fifth, Plaintiffs claim the agreement for referral services shows Samuels was an employee because Gulfshore exercised control over the performance of her work. They point to a single subsection informing Samuels that Gulfshore could terminate the agreement to support this argument. But the fact Gulfshore retained the right to end the independent contractor relationship does not mean it retained or exercised control over the way Samuels performed her work. Plaintiffs present no evidence Gulfshore retained any control over the means of the job after referring the client to Samuels. Instead, the agreement simply lays out that Gulfshore can stop allowing Samuels to use its service for referrals.

Because Samuels is an independent contractor, Plaintiffs must establish an exception to the general rule to hold Gulfshore liable. The Court will examine the three counts of the amended complaint to see if Gulfshore meets its burden of proof.

Before examining each count separately, the Court notes that Plaintiffs rely heavily on evidence the Court ruled inadmissible. Plaintiffs use Dr. Joseph Rubino's testimony to advance their argument that Gulfshore violated its duty to Jennings. The Court, however, has twice considered the

admissibility of Dr. Rubino's testimony and ruled it inadmissible. (Doc. 139; Doc. 151). It will not find his opinions admissible now. And Plaintiffs use an expert report (Doc. 114-1) dated after the deadline for submission of expert reports that will not be considered.

Likewise, Plaintiffs mention the Florida Highway Report and Gulfshore's liability insurance coverage. (Doc. 160 at 18; Doc. 160 at 8). The Court has ruled both items inadmissible. (Doc. 138; Doc. 140).

### A. Count I

Plaintiffs claim Samuels was in a joint venture with Gulfshore. But the evidence establishes there was no joint venture. "A joint venture is created when two or more persons combine their property and/or their time to conduct a particular line of trade or business deal." *See Kislak v. Kreedian*, 95 So. 2d 510, 515 (Fla. 1957). Plaintiffs have adduced no evidence of shared ownership, shared returns and risks, or shared governance. As discussed, the Florida legislature defines the relationship between the caregivers and a nurse registry as an employer-independent contractor relationship. And the agreement between the parties lays out an employer-independent contractor relationship. It states, "[Samuels] hereby engages Registry to inform Caregiver about potential Clients that [Gulfshore]…determines might be of interest to Caregiver." (Doc. 108 at 7). Gulfshore connects clients with caregivers, and Samuels used Gulfshore to connect with potential clients.

There is no joint venture. Gulfshore is thus entitled to summary judgment on Count I.

**B. Count II**

Plaintiffs claim "Gulfshore was negligent in selecting, hiring, retaining, instructing, and/or supervising" Samuels. If Gulfshore was negligent in this way, Plaintiffs could recover from Gulfshore.

Plaintiffs, however, did not negligently supervise or train Samuels. The Home Health Services Act delineates the duties and obligations of Florida's nurse registries. The subsection provides:

> A nurse registry may not monitor, supervise, manage, or train a registered nurse, licensed practical nurse, certified nursing assistant, companion or homemaker, or home health aide referred for contract under this chapter.

Fla. Stat. § 400.506(19). Under Florida law, as a licensed nurse registry, Gulfshore may only refer independent contractor care providers and may not monitor, supervise, manage, or train the care provider. (Doc. 107-1 at 3). Not only Gulfshore did have no duty to instruct or supervise Samuels, it could not under Florida law. Thus, as a matter of law, it cannot be liable for negligent supervision or training of Samuels.

Nor was Gulfshore negligent in hiring or retaining Samuels. Plaintiffs claim Gulfshore breached its duty to properly vet Samuels but fail to adduce admissible evidence supporting that claim. On the other hand, Gulfshore

12

presents evidence establishing it fulfilled its duty under Florida law. To work as an independent contractor for a nurse registry, a person must pass a background check conducted by the Florida Department of Law Enforcement. (Doc. 107-1 at 4); *see also* Fla. Stat. § 400.506(9). The Department takes and forwards the person's fingerprints to the FBI for a national criminal history record check. (Doc. 107-1 at 4). The state, not the nurse registry, determines whether the caregiver is eligible. (Doc. 107-1 at 4). Samuels's independent contractor file shows Gulfshore properly verified her credentials and conducted a background check in compliance with Florida law. (Doc. 107-1 at 4). Thus, Gulfshore fulfilled its duty and was not negligent in hiring or retaining Samuels. Gulfshore is entitled to summary judgment on Count Two.

As Gulfshore points out, Plaintiffs cite inapplicable cases. *Suarez v. Gonzalez*, 820 So. 2d 342, 345-46 (Dist. Ct. App. Fla. 2002) holds that a landlord can be liable for the tortious actions of an independent contractor if the landlord was negligent in hiring him. Gulfshore was not negligent in hiring or selecting Samuels. *McCall v. Alabama Bruno's Inc.*, 647 So. 2d 175 (Dist. Ct. App. Fla. 1994) involved a premises liability action and discusses a property owner's non-delegable duties toward invitees. The case does not pertain.

### C. Count III

Plaintiffs claim operating a vehicle for commercial purposes on the public highways is inherently dangerous and that Gulfshore should be liable

13

because it did not properly vet Samuels for the ability to provide transportation services. A party who hires an independent contractor may still be liable if a nondelegable duty is involved. Typically, a nondelegable duty arises when, for policy reasons, the employer cannot shift the responsibility for the proper conduct of the work to the contractor. *Carrasquillo v. Holiday Carpet Services, Inc.*, 615 So.2d 862, 863 (Fla. Dist. Ct. App. 1993)(citing Restatement (Second) of Torts §§ 416-26).

Plaintiffs fail to specify the nondelegable duty.[5] Still, because of the danger allegedly involved in driving, Plaintiffs appear to contend a more stringent duty to vet applies than the background check required by the Home Health Services Act. But Plaintiffs adduce no admissible evidence showing that a more stringent background check applies. If Plaintiffs find this duty outside the Home Health Services Act, the Court points out the Home Health Services Act applies and Gulfshore complied with the provisions of the Act. Gulfshore meets its burden of showing it ran a proper background check and verified Samuels' credentials.

Nor do Plaintiffs point to any Florida statute showing the duty to drive safely is nondelegable. As discussed, the Home Health Services Act allows a nursing assistant to drive a client. Gulfshore contracts out the performance of

---

[5] In the amended complaint, Plaintiffs plead "Gulfshore breached its nondelegable duty for the protection of Geraldine's widower and daughters." (Doc. 53 at 7). The duty owed to the Jennings family is the same duty owed to any member of the public.

14

the client's requested assistance—after Gulfshore verifies the background and refers the nursing assistant, it is no longer liable for any negligence by the nursing assistant in helping the client. Gulfshore meets its burden of proof by showing Florida law does not impose a nondelegable duty on nurse registries for the negligence of independent contractor nursing assistants.

Seeking to find a duty breached by Gulfshore, Plaintiffs claim Gulfshore "failed to comply with CFR Sec 37.171 or Sec 37.713."[6] Yet these regulations do not apply. CFR Sec. 37.171 and Sec. 37.713 are federal regulations requiring private entities that operate fixed route or demand responsive transportation services (such as Uber and Lyft) to avoid disparately treating disabled customers and properly train drivers to do so. *See* 49 CFR §§ 37.171, 37.173. There is no evidence the client was disabled, and Gulfshore neither operates a fixed route system nor provides responsive transportation services.

Gulfshore is entitled to summary judgment on Count III: it meets its burden of proof by adducing evidence showing it complied with its duties before referring Samuels to drive the client.

## CONCLUSION

This litigation arises from a tragedy. The Court empathizes with Jennings' husband and daughters and appreciates the magnitude of the loss.

---

[6] This alleged failure comes from an inadmissible opinion of Dr. Rubino.

15

The Court understands they want justice and to hold accountable those whose actions caused their loved one's death. But there is no evidence Gulfshore violated the duty of care it owed to Jennings. Samuels was an independent contractor who worked with clients referred by Gulfshore. There was no joint venture. Gulfshore ran the required background checks before referring Jennings to clients. Under Florida law, it could not monitor or supervise her work. The Home Health Services Act permits a nursing assistant to drive a client, and Gulfshore fulfilled its legal duty before referring Samuels to the client. Plaintiffs present no <u>admissible</u> evidence supporting their claims. The Court concludes Gulfshore was not negligent and bears no legal responsibility for Jennings' tragic death. Gulfshore is entitled to summary judgment on all counts.

Accordingly, it is now

**ORDERED**:

1. Defendant Gulfshore Private Home Care, LLC's Fourth Motion for Summary Judgment ([Doc. 155](#)) is **GRANTED**.

2. The Amended Complaint ([Doc. 53](#)) is **DISMISSED** with prejudice

3. The Clerk shall enter judgment accordingly, terminate all remaining deadlines and motions, and close the file.

DONE and ORDERED in Fort Myers, Florida, on November 23, 2020.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record.