UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ESTATE OF GERALDINE F.
JENNINGS, ROBERT J.
JENNINGS, CHERYL FAZO and
KIM S. JENNINGS,

    Plaintiffs,

v.                                       Case No.:  2:19-cv-72-FtM-38NPM

GULFSHORE PRIVATE HOME
CARE, LLC,

    Defendant/Third
    Party Plaintiff

CRIS-CAROL SAMUELS,

    Third-Party Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court are Defendant Gulfshore Private Home Care, LLC's Fourth Motion for Summary Judgment (Doc. 155), Plaintiffs' response in opposition (Doc. 161), and Gulfshore's reply (Doc. 170).[2]  After the parties

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] Gulfshore has asked for oral argument on its motion.  (Doc. 165).  After reviewing the record and the parties' memoranda of law, the Court finds that it has sufficient information to decide the motion without more argument.  M.D. Fla. L. R. 3.01(j).

briefed summary judgment and months after discovery closed, Plaintiffs filed three discovery motions (Doc. 172; Doc. 175; Doc. 182), all of which Gulfshore opposes (Doc. 173; Doc. 176; Doc. 183). So those motions are also before the Court. For the below reasons, the Court denies the discovery motions but grants summary judgment for Gulfshore.

## BACKGROUND

This is a wrongful death action. Gulfshore is a licensed Florida nurse registry that refers home healthcare professionals to elderly and disabled clients. (Doc. 88-3 at 3; Doc. 108-2). Gulfshore hires home healthcare professionals as independent contractors and refers them to clients. (Doc. 154-1, 30:12-15; 31:13-15; 112:1; 113:16-17). It uses software to send potential referrals to its registered independent contractors, and they may accept or decline the referral. (Doc. 154-1, 140:15-19).

Third-Party Defendant Cris-Carol Samuels is a certified nursing assistant who registered with Gulfshore to receive client referrals. (Doc. 153-1, 50:3-11). She signed an employment contract that defined her status with Gulfshore as an independent contractor. The parties' agreement for referral services provides, in part:

> WHEREAS, Registry is engaged in the business of identifying and notifying self employed caregivers about opportunities to provide home-care services for persons (hereinafter called "Clients") that seek the services that such caregivers are authorized under Florida law to provide;

> WHEREAS, Caregiver is a self-employed caregiver who desires to engage Registry to (i) inform Caregiver about potential Client opportunities, and (ii) provide certain administrative services in support of Caregiver's business;
>
> WHEREAS, Caregiver represents that Caregiver (i) is self-employed, (ii) maintains and operates a separate and independent business, (iii) holds himself/herself out to the public as independently competent and available to provide care-provider services, and (iv) has obtained clients through means other than Registry; WHEREAS, It is not the obligation of the Nurse Registry to monitor, supervise, manage or train caregiver referred for contract; and
>
> WHEREAS, nothing in this Agreement shall be interpreted as creating between Registry and Caregiver a relationship of partnership, employer and employee or joint venture. . . .

(Doc. 108 at 7).

Each agreement for referral services further provides, in part:

> Caregiver acknowledges that it is an independent contractor, and not an employee, for all purposes and acknowledges its sole responsibility for complying with all federal, state and local tax filing and payment obligations consistent with Caregiver's self-employed status, including but not limited to, income taxes, Social Security and Medicare taxes, self-employment taxes and their corresponding quarterly filing and estimated-payment obligations, that pertain to any remuneration received in connection with this Agreement. Caregiver also acknowledges its sole responsibility to maintain workers' compensation coverage for itself and its employees to the extent required by Florida law, and will not be eligible for unemployment insurance benefits, unless unemployment compensation coverage is provided by Caregiver or some other entity. This paragraph shall survive the termination of this Agreement.

(Doc. 108 at 7).

In March 2017, Gulfshore assigned Samuels to transport Antoinette Janich ("the Client"). (Doc. 53, ¶¶ 11-12; Doc. 88-1, ¶¶ 11-12). While doing so, Samuels drove onto a sidewalk and fatally struck Geraldine Jennings. (Doc. 53 ¶ 15; 53-1; Doc. 88-1 ¶ 15). This suit ensued.

3

Plaintiffs are Jennings' estate, husband and daughters. They sue Gulfshore for wrongful death based on three negligence theories. (Doc. 53). In Count I, Plaintiffs claim Samuels was an agent for, or in a joint venture with, Gulfshore. (Doc. 53 at 4-5). In Count II, they allege "Gulfshore was negligent in selecting, hiring, retaining, instructing, and/or supervising" Samuels. (Doc. 53 at 5). In Count III, Plaintiffs contend Gulfshore breached its duty to vet Samuels' driving ability.[3] (Doc. 53 at 6-7).

Gulfshore now moves for summary judgment on all counts, arguing it is not liable because Samuels was an independent contractor. (Doc. 150). Plaintiffs not only oppose summary judgment, but they also bring three discovery-related motions. The Court starts with the latter motions.

## PLAINTIFFS' DISCOVERY MOTIONS

Plaintiffs move to compel Gulfshore to authenticate documents purportedly published on its website. (Doc. 172). They do not stop there. They have also filed a second request for admissions (Doc. 176) and a motion to determine the sufficiency of Gulfshore's objection to their third request for admission (Doc. 183). Both motions were filed months after discovery closed

---

[3] As the Court reads it, the duty at issue in Count 3 is not the duty to ensure safe transportation services, but the duty to vet Samuels' driving ability. The "nondelegable" part of the claim is a red herring because Plaintiffs fail to allege that Gulfshore delegated any duty.

4

and summary judgment was briefed. Naturally, Gulfshore opposes all motions as untimely. And the Court agrees.

The motions are five months too late. Plaintiffs could have requested this material during discovery but did not. As Gulfshore points out, Plaintiffs did not even ask about the material at the Rule 30(b)(6) deposition when they had the chance. What is more, Plaintiffs never asked to extend the discovery deadline, opting instead to wait until after summary judgment was briefed to seek more information. The Court thus denies Plaintiffs' pending discovery motions and turns to Gulfshore's motion for summary judgment.

## GULFSHORE'S MOTION FOR SUMMARY JUDGMENT

**A. Legal Standard**

Summary judgment is proper only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *See O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). An issue is genuine if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When opposing a motion for summary judgment, the nonmoving party must show the existence of specific facts in the record that create a genuine issue for trial. *See id.* at 256. Courts view the evidence and draws reasonable inferences from the evidence for the nonmoving party. *See Burton v. City of Belle Glade,* 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (citation omitted). Failure to show evidence of any essential element is fatal to the claim and courts should grant summary judgment. *See Celotex,* 477 U.S. at 322-23. But if reasonable minds could find a genuine issue of material fact, then summary judgment should be denied. *See Miranda v. B & B Cash Grocery Store,* Inc., 975 F.2d 1518, 1532 (11th Cir. 1992).

**B. Discussion**

This wrongful death suit stems from Gulfshore's alleged negligence. A claim for wrongful death is "created and limited by Florida's Wrongful Death Act." *Cinghina v. Racik,* 647 So.2d 289, 290 (Fla. 4th DCA 1994); *Estate of McCall v. United States,* 134 So.3d 894, 915 (Fla. 2014). That law provides a right of action "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person . . . and the

6

event would have entitled the person injured to maintain an action and recover damages if death had not ensued." Fla. Stat. § 768.19. To state a claim for negligence in a wrongful death action, a plaintiff must allege "(1) the existence of a legal duty owed to the decedent, (2) breach of that duty, (3) legal or proximate cause of death was that breach, and (4) consequential damages." *Jenkins v. W.L. Roberts, Inc.*, 851 So.2d 781, 783 (Fla. 1st DCA 2003).

The parties square off on the first element. Gulfshore argues it owes no legal duty because Samuels was an independent contractor. (Doc. 155 at 2-3). If Gulfshore is correct, Plaintiffs face an uphill battle ascribing liability to it because Florida follows the general rule that the employer of an independent contractor is not liable for the independent contractor's negligence because the employer has no control over how the work is done. See *McCall v. Ala. Bruno's, Inc.*, 647 So.2d 175, 177 (Dist. Ct. App. Fla. 1994) (quoting Restatement (Second) of Torts § 409). But Florida recognizes exceptions to the general rule: (1) negligence in selecting, instructing, or supervising the contractor; (2) non-delegable duties arising out of some relation toward the public or the particular plaintiff; and (3) work specially, peculiarly, or 'inherently' dangerous. *Id.*

Whether Samuels is an independent contractor is the threshold matter. On this issue, the Court recognizes that "the question of an employer/employee relationship is generally a question of fact, and therefore a question for the trier of fact." *Pate v. Gulmore*, 647 So.2d 235, 236 (Fla. 1st Dist. Ct. App. Fla

1994). But, "[t]here are of course circumstances in which the undisputed facts will demonstrate the nonexistence of an employment relationship as a matter of law and thereby establish the proper basis for granting summary judgment. Thus, if the only reasonable view of the evidence compels the conclusion that an employment relationship did not exist, a court may determine the issue as a matter of law." *Harper ex rel. Daley v. Toler*, 884 So.2d 1124, 1129-30 (Fla. 2d DCA 2004) (citations omitted). Such is the situation here.

To start, Samuels acknowledges that she was an independent contractor. (Doc. 153-1 at 48:24-25). Her concession tracks Florida law that classifies caregivers referred by nurse registries as independent contractors. This classification starts with the Home Health Services Act, Fla. Stat. §§ 400.461 to 400.5185, which governs health and medical services furnished by an organization to an individual in the individual's home. The Act defines "nurse registry" as

> any person that procures, offers, promises, or attempts to secure health-care-related contracts for registered nurses, licensed practical nurses, **certified nursing assistants**, home health aides, companions, or homemakers, **who are compensated by fees as independent contractors**, including, but not limited to, contracts for the provision of services to patients and contracts to provide private duty or staffing services to health care facilities[.]

Fla. Stat. § 400.462 (emphasis added). It is undisputed that Samuels is a certified nursing assistant. (Doc. 153-1 at 42; Doc. 108-8). And the Act says

8

that a certified nursing assistant "referred for contract under this chapter by a nurse registry **is deemed an independent contractor an**d not an employee of the nurse registry[.]" Fla. Stat. § 400.506(6)(d) (emphasis added).

Despite this clear statutory language, Plaintiffs argue the Court should apply the seven-factor test set out in *Cantor v. Cochran*, 184 So.2d 173 (Fla. 1966) to determine whether an employer-employee relationship exists. But the Court need not look past Samuels' concession and the unambiguous language of the Home Health Services Act to determine she was an independent contractor as a matter of law.[4]

Seeming to grasp at straws, Plaintiffs present five arguments to convince the Court that Samuels was not an independent contractor. As discussed below, none of the arguments prevail.

First, Plaintiffs argue Gulfshore fraudulently identifies as a nurse registry while it operates a non-emergency medical transportation business. Although they concede Gulfshore is a nurse registry (Doc. 160 at 3), they try to muddy the water by arguing it is impermissible for a nurse registry to provide transportation. But their argument is not rooted in any record fact. According

---

[4] Even if the Florida legislature did not classify Samuels as an independent contractor per the Home Health Care Act, application of the *Cantor* test would still compel the Court to find Samuels to be an independent contractor. Gulfshore exercised no control over her work. She is licensed by the State of Florida and received no training or supervision from Gulfshore as to the means and methods of her work. Samuels understands she is an independent contractor and was paid directly by the client. And she used her own tools and materials, including driving her own car at the time of the accident.

9

to Gulfshore's expert James Mark, a certified nursing assistant generally "provides Activities of Daily Living and Instrumental Activities of Daily Living custodial care services[,]" one of which is transportation. (Doc. 107-1 at 5-6). Furthering the point on transportation is Florida Administrative Code 59A-18.009(2)(b) that says among the responsibilities of a "companion" is the responsibility "to provide escort services such as taking the patient or client to the health care provider." Plaintiffs have adduced no evidence to counter these points.

Based on one driving event, Plaintiffs also leap to the conclusion that transportation is a core business activity of Gulfshore. But one caregiver transporting a single client does not necessarily convert a nurse registry business into a transportation company.

Second, Plaintiffs contend the Home Health Services Act does not apply because Gulfshore referred Samuels to help the Client in an activity "outside of what is permitted by Florida law"—driving the Client. (Doc. 160 at 20-21). But under the Act, a nurse registry can provide occasional transportation services. Here, the Client requested a nursing assistant to assist with her custodial care. (Doc. 107-1 at 6). Transportation is a custodial care service and incidental to the overall care services normally provided by a nursing assistant. (Doc. 107-1 at 6). In addition, Section 400.506(6)(b) permits a nursing

assistant to assist with "physical transfer." The Court thus rejects Plaintiffs' second argument and finds the Home Health Services Act applies.

As best the Court can tell, Plaintiffs' third argument is that Gulfshore is hiding behind its nurse registry status when performing non-emergency medical transportation. (Doc. 160 at 4-5). On this point, Plaintiffs suggest that Samuels had to drive the Client because she learned about that task after she accepted the assignment. (Doc. 160 at 4). Typically, a nursing assistant knows the full assignment's details before accepting it, so Samuels' situation with the Client was unusual. But Plaintiffs have not shown how Samuels needing to transport the Client after accepting the assignment changes her independent contractor status. Nor have Plaintiffs overcome the testimony of Gulfshore's owner, who said that nursing assistants can decline a job if the services requested differ from the description provided when they accepted the job. (Doc. 154-1, 142:8-14).

Fourth, Plaintiffs argue the general independent contractor rule should not apply because Jennings was an innocent bystander. This argument is a nonstarter. If Plaintiffs want to recover from Gulfshore for Jennings' death, they must show Gulfshore violated a duty of care owed to her. Central to that analysis is the relationship between Gulfshore and Samuels. Other than their say so, Plaintiffs have adduced nothing to show that a third-party bystander

11

somehow changes the independent-contractor relationship between Gulfshore and Samuels.

Fifth, Plaintiffs claim the agreement for referral services shows Samuels was an employee because Gulfshore exercised control over the performance of her work. To support this argument, they point to a single subsection in the agreement informing Samuels that Gulfshore could terminate the agreement. (Doc. 160 at 14). But the fact that Gulfshore retained the right to end the independent contractor relationship does not mean it retained or exercised control over the way Samuels performed her work. Plaintiffs present no evidence that Gulfshore retained any control over the means of the job after referring clients to Samuels. Instead, the agreement simply lays out that Gulfshore can stop allowing Samuels to use its service for referrals.

Because Plaintiffs cannot overcome Samuels' status as an independent contractor, their only avenue to hold Gulfshore liable is an exception to the general independent contractor rule. Here lie some counts of the Amended Complaint.

But before examining the Amended Complaint's counts, the Court notes that Plaintiffs rely heavily on inadmissible evidence. First, they use Dr. Joseph Rubino's testimony to argue that Gulfshore violated its duty to Jennings. The Court, however, has twice considered the admissibility of Dr. Rubino's testimony and twice ruled it inadmissible. (Doc. 139; Doc. 151). And

Plaintiffs offer no reason for the Court to find now that his opinions are admissible. Second, Plaintiffs mention a Florida Highway Report and Gulfshore's liability insurance coverage (Doc. 160 at 18; Doc. 160 at 8)—both of which the Court had ruled inadmissible (Doc. 138; Doc. 140). Third, Plaintiffs try to use a supplemental expert report from Dr. Rubino (Doc. 114-1) dated after the deadline for submission of expert reports to win their case. But the Court need not consider that untimely report. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007)("a supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed"); *see also Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-cv-947, 2009 WL 1139575, at *2 (M.D. Fla. Apr. 27, 2009).

The Court turns now to each count in the Amended Complaint.

*1. Count I*

In Count I, Plaintiffs claim Samuels was in a joint venture with Gulfshore. But the undisputed material evidence shows otherwise. "A joint venture is created when two or more persons combine their property and/or their time to conduct a particular line of trade or business deal." *See Kislak v. Kreedian*, 95 So. 2d 510, 515 (Fla. 1957). Plaintiffs have adduced no evidence of shared ownership, shared returns and risks, or shared governance. The agreement between Samuels and Gulfshore states, "nothing in this Agreement

13

shall be interpreted as creating between Registry and Caregiver a relationship of partnership, employer and employee or joint venture." (Doc. 108 at 7). As discussed, the Florida legislature defines the relationship between the caregivers and a nurse registry as an employer-independent contractor relationship. And the agreement between the parties lays out an employer-independent contractor relationship. It states, "[Samuels] hereby engages Registry to inform Caregiver about potential Clients that [Gulfshore] . . . determines might be of interest to Caregiver." (Doc. 108 at 7). Gulfshore connects clients with caregivers, and Samuels used Gulfshore to connect with potential clients. There is no joint venture. Gulfshore is thus entitled to summary judgment on Count I.

    2. *Count II*

Count II alleges that "Gulfshore was negligent in selecting, hiring, retaining, instructing, and/or supervising" Samuels. (Doc. 53 at 6). This count aligns with the first exception to the general independent rule. Plaintiffs have no evidence that Gulfshore negligently supervised or trained Samuels. In fact, the Home Health Services Act prevented Gulfshore from monitoring, supervising, managing, or training Samuels. Fla. Stat. § 400.506(19) ("A nurse registry may not monitor, supervise, manage, or train a . . . certified nursing assistant . . . referred for contract under this chapter."); (Doc. 107-1 at 3). It only allowed Gulfshore to refer independent contractor care providers. Thus,

as a matter of law, it cannot be liable for negligent supervision or training of Samuels.

Nor was Gulfshore negligent in hiring or retaining Samuels. Plaintiffs claim—but have no supporting admissible evidence—that Gulfshore breached its duty to properly vet Samuels. But Gulfshore presents evidence establishing it fulfilled its duty under Florida law.

To work as an independent contractor for a nurse registry, a person must pass a background check conducted by the Florida Department of Law Enforcement. (Doc. 107-1 at 4); *see also* Fla. Stat. § 400.506(9). The Department forwards a person's fingerprints to the Federal Bureau of Investigation for a national criminal history record check. (Doc. 107-1 at 4). The state, not the nurse registry, determines whether the caregiver is eligible. (Doc. 107-1 at 4). Here, Samuels' independent contractor file shows Gulfshore properly verified her credentials and conducted a background check in compliance with Florida law. (Doc. 107-1 at 4). Gulfshore thus fulfilled its duty and was not negligent in hiring or retaining Samuels.

Plaintiffs' case law to support Count II are inapplicable. In *Suarez v. Gonzalez*, 820 So. 2d 342, 345-46 (Dist. Ct. App. Fla. 2002), the court held that a landlord can be liable for the tortious actions of an independent contractor if the landlord was negligent in hiring him. As shown above, Gulfshore was not negligent in hiring or selecting Samuels. So *Suarez* does not help. The same

15

is true for *Williams v. Wometco Enterprises, Inc.*, 287 So.2d 353 (Dist. Ct. App. Fla. 1974). That case supports this Court's finding because *Williams* held an employer cannot be liable for the negligent discharge of a firearm by an independent contractor security guard when the employer did not supervise or control the security guard.

The Court thus finds Gulfshore is entitled to summary judgment on Count II.

### 3. Count III

Finally, Plaintiffs contend that Gulfshore is vicariously liable for Samuels' negligence because Gulfshore breached its non-delegable duty to properly vet Samuels for the ability to properly operate a vehicle for commercial purposes on a public highway. A party who hires an independent contractor may still be liable if a nondelegable duty is involved. Typically, a nondelegable duty arises when, for policy reasons, the employer cannot shift the responsibility for the proper conduct of the work to the contractor. *See Carrasquillo v. Holiday Carpet Services, Inc.*, 615 So.2d 862, 863 (Fla. Dist. Ct. App. 1993) (citing Restatement (Second) of Torts §§ 416-26).

Plaintiffs fail to specify the nondelegable duty.[5] Based on the Court's reading, this is not a nondelegable duty claim or an inherently dangerous

---

[5] In the Amended Complaint, Plaintiffs plead "Gulfshore breached its nondelegable duty for the protection of Geraldine's widower and daughters." (Doc. 53 at 7). The duty owed to the Jennings family is the same duty owed to any member of the public.

16

activity claim. In their complaint, Plaintiffs use these terms of art to suggest they are raising an exception to the general rule that the employer of an independent contractor is not liable for the independent contractor's negligence. But the allegations against Gulfshore solely concern the duty to vet. Because of the danger allegedly involved in driving, Plaintiffs claim a more stringent duty to vet applies than the background check required by the Home Health Services Act. But Plaintiffs adduce no admissible evidence showing that a more stringent background check applies.

If Plaintiffs find this duty outside the Home Health Services Act, the Court points out the Home Health Services Act applies and Gulfshore complied with the Act. Under the Home Health Services Act, Gulfshore is a nurse registry who contracts with independent contractor nursing assistants. As a nurse registry, Gulfshore's primary job is to comply with Florida rules and regulations, specifically Florida Statute Chapters 400, 408, 435, and Rule 59A-18 F.A.C. These chapters impose requirements for a background check a nurse registry must complete before referring a nursing assistant to clients. (Doc. 107-1 at 4). Samuels' independent contractor file shows Gulfshore properly verified Samuels' credentials and background screen. (Doc. 107-1 at 4). Plaintiffs do not point to any Florida statute that imposes this more stringent duty to vet. Gulfshore meets its burden of showing it ran a proper background check and verified Samuels' credentials.

17

Plaintiffs do not stop there. Seeking to find a duty breached by Gulfshore, Plaintiffs claim Gulfshore "failed to comply with CFR Sec 37.171 or Sec 37.713."[6] Yet these regulations do not apply. They are federal regulations requiring private entities that operate fixed route or demand responsive transportation services (such as Uber and Lyft) to avoid disparately treating disabled customers and properly train drivers to do so. *See* 49 CFR §§ 37.171, 37.173. There is no evidence the Client was disabled, and Gulfshore neither operates a fixed route system nor provides responsive transportation services.

Just as Plaintiffs' cited case law did not help them on Count II, the same is true for *McCall v. Alabama Bruno's Inc.*, 647 So. 2d 175 (Dist. Ct. App. Fla. 1994) on Count III. That case involved a premises liability action and discusses a property owner's nondelegable duties toward invitees. The case does not pertain because no such nondelegable duty applies to Gulfshore.

At bottom, the undisputed record evidence shows that Gulfshore complied with its duties before referring Samuels to drive the Client. It is thus entitled to summary judgment on Count III.

## CONCLUSION

This litigation arises from a tragedy. But there is no evidence Gulfshore violated any duty of care it owed to Jennings. Samuels was an independent

---

[6] This alleged failure comes from an inadmissible opinion of Dr. Rubino.

contractor who worked with clients referred by Gulfshore. There was no joint venture. Gulfshore ran the required background checks before referring Jennings to clients. Under Florida law, it could not monitor or supervise her work. The Home Health Services Act permits a nursing assistant to drive a client, and Gulfshore fulfilled its legal duty before referring Samuels to the client. Plaintiffs present no admissible evidence supporting their claims. The Court finds Gulfshore was not negligent and bears no legal responsibility for Jennings' tragic death. Gulfshore is entitled to summary judgment on all counts.

Accordingly, it is now

**ORDERED**:

1. Defendant Gulfshore Private Home Care, LLC's Fourth Motion for Summary Judgment (Doc. 155) is **GRANTED**.

2. Plaintiffs' discovery motions (Doc. 172; Doc. 175; Doc. 182) are **DENIED**.

3. The Clerk is **DIRECTED** to enter judgment, deny all other pending motions as moot, terminate all remaining deadlines, and close the file.

**DONE and ORDERED** in Fort Myers, Florida, on November 24, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record.